KOENIG v. UNITED LIFE INS. ASS'N.

(Supreme Court, Appellate Division, First Department. December 22, 1896.)

1. LIFE INSURANCE—MISREPRESENTATION—SUFFICIENCY OF EVIDENCE.

In an action on a life policy, in which the defense was that insured had falsely stated in his application that he did not have asthma, defendant's vice president testified that its medical examiner, who was also medical examiner for another company, told witness, before the policy in suit was applied for, that insured had an application pending in such other company; that he was a good risk, and that he (the examiner) would transfer the risk to defendant. Both applications were obtained by the same solicitor, and the medical examiner filled in the medical blanks in both. *Held*, that the jury were justified in finding that an admission in the first application to the effect that insured had asthma was not binding, because inserted without insured's knowledge.

2. SAME—PRIOR REJECTION OF INSURED—WAIVER.

In an action on a life policy, where the defense was breach of warranty that insured had never been rejected by any other company, defendant's vice president testified that its medical examiner, who was also medical examiner for another company, had told witness that insured had an application pending in such other company; that he was a good risk; and that he (the examiner) would transfer the risk to defendant. In order to do this he rejected insured for the other company and accepted him for defendant. *Held,* that a finding that defendant knew of the rejection by such other company, and waived the warranty, was warranted. 38 N. Y. Supp. 506, affirmed.

Appeal from trial term, New York county.

Action by Adelbert Vincent Koenig against the United Life Insurance Association. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes (38 N. Y. Supp. 506), defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Edmund T. Oldham, for appellant.

Louis Vorhaus, for respondent.

WILLIAMS, J.    The action was brought to recover upon a policy of life insurance.   The policy was for the benefit of the plaintiff, upon the life of his father.   The defense interposed in the action was breach of warranty.   The warranties claimed were, in effect, that no previous application for insurance upon the life of the insured had been made and rejected, and the insured had not been afflicted with asthma.   There were two applications made for insurance upon the life of the insured,—one to the National Mutual Life Insurance Company, and the other to the defendant.   The one to the National Mutual was dated April 15, 1892, and the one to the defendants was dated April 19, 1892.   These two companies had offices in the same building,—the one upon the floor above the other.   Both these applications were taken by the same solicitor, one Michaelis, who filled up the blanks in both.   The examinations under both applications were made by the same physician, Dr. Boyle, who was the medical examiner for both companies, and who filled up the medical blanks in both applications.   Both the solicitor and the doctor were deceased at the time of the trial.   The medical examination under the first application appears to have been made April 16, 1892, and the application to have been rejected as early as April 18, 1892.   The second application, as already stated, was made to the defendant April 19, 1892.   The examination, however, under this application appears not to have been made until May 4, 1892. In the first application it was stated that the insured had asthma, and the doctor reported the risk not a good one for that reason. In the second application nothing was said about asthma, and the doctor reported the risk a good one.   Mr. Hatch, the vice president of the defendant at the time these applications were made, was put upon the stand by the plaintiff at the trial, and he testified that both the solicitor, Michaelis, and Dr. Boyle told him, at the time the application was made to the defendant, that the insured had made an application to the National Mutual, and that he, the witness, knew

42 N.Y.S.—48

that the insured had made such application.    Then the following
further examination of the witness was had:

"Q. What did Dr. Boyle tell you about this case?    A. He told me he was a
first-class risk.    Q. Did he tell you he had rejected him in the other company?
A. No.    Q. Or that he had examined him for the other company?    A. He told
me he had examined him for the other company, but what else he told me I
can't tell you.    Q. Isn't it a fact that after an application had been made by
Mr. Koenig to the National Mutual, and after the doctor, Dr. Boyle, had exam-
ined him, he told you people that he had a good risk up there for $5,000, and
that he could fix it so that it would go to your company, and that is the reason
he rejected him, but that he was not accepted by the other company?    Is not
that the fact substantially?    A. It is back a good while.    My remembrance of
it is that Dr. Boyle told me he had a risk which we would take that was in the
other company, and that he would get it with us.    That is all I can remember.
By the Court:    Q. This was before your company issued the policy?    A. Yes."

Upon this condition of the evidence the case was submitted to the
jury, in a brief charge, wherein the court said, among other things:  ·

"The first defense is breach of warranty, in this, that the insured represented
that no application for insurance had been made to any other company, or had
been rejected by any other company.    It appears that the insured did apply to
another company for insurance, and was rejected by that company as an unde-
sirable risk.    I charge you as a matter of law that this breach is a complete
defense to this action, unless you find as a matter of fact that the defendant
company knew of such previous application and rejection, and took the risk not-
withstanding, with full knowledge of all those facts.    The next defense is that
the insured misrepresented his physical condition, warranting that he was in
good bodily health, when in fact he was afflicted with asthma and like ailments,
which have a tendency to shorten life.    If you find as a matter of fact that the
insured did misrepresent his physical condition, that he was ailing, was troubled
with ailments instead of being in perfect health, it will be your duty to find a
verdict in favor of the defendant.    In short, if you find there was any breach
of condition upon the part of the insured, or any form of imposition whatever
on his part, the defendant will be entitled to your verdict.    If, on the other
hand, you find on all the issues in favor of the plaintiff,—that is, you find that the
defendant had knowledge of the former application and knowledge of the in-
sured's rejection by the other company, if you find that he was in perfect health
and in the condition in which he described himself to be, that he had no ail-
ment,—your verdict will be for the plaintiff."

The court, upon defendant's request, refused to charge that there
was no proof of knowledge on the part of the defendant of the rejec-
tion of the application to the National Mutual Insurance Company,
but left that question to the jury, charging that the knowledge of Dr.
Boyle was not the knowledge of the defendant, but if he communi-
cated such knowledge to the defendant then it was bound.    It thus
appears that the right of the plaintiff to recover in the case was made
to depend upon the determination of two questions of fact: First,
whether the defendant knew of the rejection, by the National Mu-
tual, of the former application; second, whether the insured was af-
flicted with asthma.    The jury found both of these questions of fact
in favor of the plaintiff, and the only question raised by the appellant
upon this appeal is whether there was evidence to support such find-
ings.    No question is raised as to the plaintiff's right to recover if
these facts were properly found by the jury, and we do not therefore
need to discuss the question of law whether such findings authorized
a verdict in favor of the plaintiff.    Both the solicitor and doctor knew
all about these matters.    They filled up the blanks in both applica-

tions. They knew whether there was or was not the existence ·of asthma; and they knew that the former application was rejected. Their evidence, however, was not taken, and is not before us. There was a good deal of evidence taken as to the existence of asthma, and upon all the evidence before the jury they were justified in finding, as they did, that the insured was not afflicted with asthma. It is said that the insured admitted it,—stated it in the first application. He signed the application, it is true, but he was deceased at the time of the trial, and was not there to explain how he happened to state the existence of asthma in that application and to omit it in the application to defendant. The jury were left to inference on this subject from the facts proved, and they very likely believed that the insured was not aware that the existence of asthma was stated in that application when he signed it. The filling up of the blanks was by the doctor, and if the putting of asthma in the first application, and the rejection of the application for that special reason, were in accordance with the truth,—the fact,—how did it happen that immediately after such rejection an entirely similar application to the defendant was gotten up by the same solicitor and the same doctor, in which there was no reference to the existence of asthma, and the doctor not only recommended the acceptance of the application, but told the vice president, Mr. Hatch, that the insured was a first-class risk? The jury may well have inferred that the doctor, without the knowledge of the insured, put the existence of asthma into the first application and rejected the application for that reason, in order to take the risk away from the National Mutual and secure it for the defendant. The vice president, Mr. Hatch, testified on the trial that the doctor told him, as to the matter, that there was a risk in the National Mutual which he would get with defendant; that he had examined·the insured for the other company, and he was a first-class risk. His memory failed him as to anything else the doctor told him as to what he said or what the vice president understood as to the manner in which the transfer of the risk from the other company to the defendant was to be, or was, made. We think there was evidence sufficient to support the finding by the jury that the insured was not afflicted with asthma.

As to the other question, we have this peculiar condition of things: The vice president, Mr. Hatch, testified that he was informed both by the solicitor and the doctor that the application had been made by the insured to the National Mutual, that the doctor told him he had examined the insured for that company, and he was a first-class risk, and he would get the risk away from that company and with the defendant, and then the application was made to the defendant and the insured was examined, and accepted, and the policy was issued by the defendant; and yet the vice president testified that he could not recollect what was said to him, if anything, as to the result of the application to the other company, or how or by what means the risk was transferred from the National Mutual to his (the vice president's) own company. The jury might make some inferences from the facts that did appear in the case as to things which the vice president could not recollect. The vice president knew the applica-

tion had been made; and, the risk having been transferred to his company thereafter, it may be inferred that he understood the application had not been accepted or a policy issued by the National Mutual thereon. There is no suggestion that the vice president supposed that the insured would take a policy in both companies. On the contrary, the risk was to be transferred from the other company to the vice president's company. It may well be inferred that the doctor did tell the vice president how the transfer had been, or was to be, effected, and that the vice president understood that no policy had been or would be issued on the former application. It is not denied that the knowledge of the vice president, Mr. Hatch, was the knowledge of the defendant, and under the charge the defendant's knowledge could not be established by merely showing that the doctor had such knowledge. We do not doubt, however, under the evidence in the case, that the jury might, as they evidently did, infer that the vice president, Mr. Hatch, did know and understand that the application by the insured to the National Mutual Insurance Company had not been accepted, and that no policy had been issued thereon. While it is true the vice president testified that he did not have such knowledge, yet he subsequently testified that he had no recollection, and could not state, what the doctor told him on the subject. The jury were not therefore foreclosed, by the answer made by him as to such knowledge, from finding, as an inference from all the other evidence in the case, that he did have such knowledge and understanding at the time the policy was issued. We think the verdict of the jury was supported by the evidence, and that the judgment and order appealed from should be affirmed, with costs. All concur.